Aaron R. Easley, Esq.
SESSIONS FISHMAN NATHAN & ISRAEL, LLC
3 Cross Creek Drive
Flemington, New Jersey 08822-4938
Telephone: (908) 237-1660
Facsimile: (908) 237-1663
E-Mail: aeasley@sessions.legal
Attorney for Plaintiff,
S.K. Laboratories, Inc.

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| S.K. LABORATORIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> SHREDZ SUPPLEMENTS LLC and ANKUR GARG, <br><br> Defendants | CASE NO.: 19-cv-12990 <br><br> **AMENDED COMPLAINT** <br><br><br> **JURY TRIAL DEMANDED** |

**NOW INTO COURT,** through undersigned counsel, comes Plaintiff, S.K. Laboratories, Inc. ("Plaintiff"), and hereby files its Complaint and Jury Demand against SHREDZ Supplements LLC ("Shredz") and Ankur Garg ("Garg") (collectively, "Defendants"), on personal knowledge as to its own activities and on information and belief as to the activities of others, as follows:

### I.    JURISDICTION AND VENUE

1.    This is an action for breach of contract and unjust enrichment arising under a Contract Manufacturing Agreement ("Manufacturing Agreement"), as amended, between Plaintiff and Shredz which, among other things, stipulates Jersey City, New Jersey, as the proper jurisdiction for disputes at Clauses 14.2 and 14.3. Although the jurisdictional agreement is as to the voluntary dispute resolution procedures under the Manufacturing Agreement, jurisdiction should be appropriate in Jersey City, New Jersey

for litigated claims as well. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 and 1400.

2.      This Court has personal jurisdiction over the Defendants. By way of example, Defendants are located in New Jersey. Defendants have also agreed to personal jurisdiction within this District in the Manufacturing Agreement. By way of further example and without limitation, the Defendants have purposefully and voluntarily placed their products, as explained herein, into the stream of commerce with the expectation that they will be purchased in the District of New Jersey, and the products are actually purchased in the District of New Jersey.

3.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because there is diversity of citizenship between all members of the Defendant Shredz and the Defendant Garg, on the one hand, and the Plaintiff, on the other hand, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

## II.      THE PARTIES

4.      Plaintiff is a corporation organized and existing under the laws of California, with a place of business at 5420 La Palma Avenue in Anaheim, California, 92807. Plaintiff is a citizen of California.

5.      Defendant Shredz is a limited liability company organized and existing under the laws of New Jersey, with a place of business of One Evertrust Plaza, Suite 801, Jersey City, NJ, 07302. Based on reasonable attempts to determine the identities of the members of the Defendant Shredz, Plaintiff, on information and belief, alleges that the two members of the Defendant Shredz are Arvin Lal and the Defendant Garg. This good faith belief is based on, *inter alia*, statements made by Lal in a December 2013 article published in Brown Girl Magazine that the "founders" of the Defendant Shredz were Lal and the Defendant Garg, and "we have never looked for investors."

6.      Defendant Garg is Shredz's "Chief Strategy Officer" and a personal guarantor of contractual amounts owed by Shredz under the Agreement, and, on information and belief, either a resident of New Jersey with a place of business of One

2

Evertrust Plaza, Suite 801, Jersey City, NJ, 07302, or more recently a resident of Pennsylvania with a place of business at 170 Industry Drive in Pittsburgh, Pennsylvania,15275. This information is based, *inter alia,* on Garg's LinkedIn page as of June 10, 2019, which identifies him as being located in "Pittsburgh, Pennsylvania." Therefore, the Defendant Garg is a citizen of New Jersey or Pennsylvania.

7. Arvin Lal is, on information and belief, a citizen of New York. This information and belief is based, *inter alia,* on Lal's Twitter page as of June 10, 2019, which identifies him as being located in "New York City."

### III.  FACTUAL BACKGROUND

8. Plaintiff, founded in 1991, is a contract manufacturer specializing in manufacturing dietary supplement products.

9. Shredz is a seller of dietary supplement products, and purports, according to its website, to provide "the best nutritional supplements and fitness information to our millions of followers in over 100 countries."

10. In 2014, Shredz approached Plaintiff, wishing to retain Plaintiff to become a contract manufacturer for certain of Shredz's products.

11. Plaintiff and Shredz entered into the Manufacturing Agreement, as well as a related Quality Agreement, in or around October 2014, wherein Plaintiff agreed to manufacture products for Shredz, and in exchange, Shredz agreed to pay for those products within 45 days after receiving shipment of the products from Plaintiff.

12. Plaintiff delivered all of the products Shredz ordered in a timely manner, consistent with Shredz's specifications, and fully performed its contractual duties under the Manufacturing Agreement.

13. Plaintiff supplied Shredz with nearly $2 Million worth of products over time, which Shredz sold at a very significant mark-up to retailers, distributors, and consumers directly.

14. The products supplied to Shredz by Plaintiff were a major contribution to the success of Shredz in the marketplace. Indeed, in an article published on the popular

men's lifestyle website www.mensxp.com in February 2016 about Arvin Lal, Shredz's CEO and founder, it was reported as follows: "What Arvin Lal started in the basement of his New Jersey home is now a multimillion-dollar business. Today, Shredz, only 4 years after its inception, stands in an arena where industry bigwigs have tried to breakthrough for decades."

15. According to another article published on Forbes magazine's website in March 2014, Shredz generated $2.7 Million in revenue in the first two-and-a-half months in 2014, and Mr. Lal boasted that "the trend for his company is about 15-20% growth month-over-month in gross revenue."

16. Despite the fact that the products made by Plaintiff for Shredz were much of the reason for Shredz's massive publicly-reported success, Shredz failed to pay for most of the products it ordered. Stringing Plaintiff along in delaying payment for many months, and only after Plaintiff threatened legal action against Shredz, in February 2016 Plaintiff and Shredz agreed to a payment schedule whereby Shredz agreed to pay off the balance of over $1.3 Million owed to Plaintiff by the end of July 2016. The agreement was memorialized in a Confidential Settlement Agreement and Release, effective February 18, 2016.

17. Over the course of several months and on multiple occasions, and even though, according to the above-quoted articles, Shredz was running a "multi-million dollar business" with "about 15-20% growth month-over-month in gross revenue," Shredz failed to make timely payments under the payment schedule set forth in Confidential Settlement Agreement and Release.

18. Nevertheless, and in yet another effort to amicably resolve their differences and to allow Shredz to pay off the amounts due rather than resort to litigation, Plaintiff agreed to another revised payment schedule. When Shredz failed to pay under that revised schedule, Plaintiff, reluctantly, again agreed to a revised payment schedule. This happened multiple times. These revised payment schedules, memorialized in the form of written addenda to the Confidential Settlement Agreement and Release, were

4

executed in April 2016 (First Addendum); June 2016 (Second Addendum); October 2016 (Third Addendum); and March 2017 (Fourth Addendum).

19. Defendant Garg, Shredz's "Chief Strategy Officer," personally guaranteed in writing the repayment of all amounts owed by Shredz, beginning from the First Addendum and in every addenda thereafter.

20. Unsurprisingly, Shredz failed to make timely payments under the Fourth Addendum, just as it did with respect to the other addenda. The total outstanding amount is approximately $128,413.83.

21. The last payment made by Shredz was in August 2018, but timely payments have not resumed.

22. Given that it appears to be Shredz's business model to generate millions of dollars from product sales without timely paying the manufacturer who produced many of those products, Plaintiff has no choice at this time but to sue for damages of not only $128,413.83, plus interest, as well as damages resulting from the business impact on Plaintiff due to Shredz's failure to pay, which may exceed $1 Million.

23. Shredz's spokespeople have publicly bragged about starting the company off with a $5,000 credit card, and Shredz has treated Plaintiff as a lender, ordering products and failing to pay for them, putting Plaintiff in an untenable position where it had to choose to pay either its vendors or its employees.

24. To make matters worse, Shredz had requested from Plaintiff a full list of all of its formulas, ingredients and specifications, stating it was needed for compliance purposes when, in reality and as Plaintiff would later learn, Shredz was using the information to try to hire other manufacturers. In other words, Shredz was accepting competitive information and voluminous amounts of products from Plaintiff that Shredz apparently had no intention to pay for, running up the bill to nearly $2 million and making millions of dollars more by selling those products, all the while looking to eventually stiff Plaintiff with the bill and begin running the same scheme with the next manufacturer.

25. Defendants' refusals to pay have been in bad faith and with reckless disregard to Plaintiff's rights, particularly as Defendants have made a significant profit at the expense of Plaintiff, and have taken advantage of Plaintiff's good faith attempts to amicably resolve this matter on multiple occasions.

26. Garg publicly bragged that he and Mr. Lal were generating monthly salaries of $75,000 (or $900,000 each per year), monies it is now clear were essentially borrowed or converted from Plaintiff and, on information and belief, other manufacturers, allowing Garg and Mr. Lal to live their lavish lifestyles they boasted about on social media.

### IV.    FIRST CAUSE OF ACTION: BREACH OF CONTRACT

27. Plaintiff re-alleges and reavers each and every allegation contained in Paragraphs 1 through 26 of this Complaint, as if fully set forth herein.

28. An agreement exists as between Plaintiff and Shredz, which is personally guaranteed by Garg, with respect to Shredz's payments due to Plaintiff.

29. Defendants have breached their agreement with Plaintiff by virtue of the fact that they have failed to timely pay under the parties' agreement.

30. Plaintiff has been damaged by Defendants' breach, including in the amount of the outstanding payments of $128,413.83, plus interest, as well as having suffered damages resulting from the business impact on Plaintiff due to Shredz's failure to pay, which includes without limitation lost business opportunities, lost legal fees, lost interest, and employee termination costs, which damages may exceed $1 Million.

31. Plaintiff has fully performed all of its contractual duties with respect to Defendants.

32. Defendants are therefore liable for breach of contract to Plaintiff and all resulting damages.

### V.    SECOND CAUSE OF ACTION: UNJUST ENRICHMENT

33. Plaintiff re-alleges and reavers each and every allegation contained in Paragraphs 1 through 32 of this Complaint, as if fully set forth herein.

34. In the alternative to their breach of contract claim, Plaintiff alleges that Defendants have been unjustly enriched by virtue of the fact they received benefits at the expense of Plaintiff in the form of products Defendants sold at a significant mark-up, and retention of those benefits without payment to Plaintiff would be unjust.

## VI.     PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for entry of judgment against the Defendants as follows:

   a. A Declaration and/or Judgment by this Court that the Defendants have breached their agreement with Plaintiff;

   b. In the alternative, a Declaration and/or Judgment that the Defendants have been unjustly enriched as a result of their failure to pay Plaintiff for products manufactured by Plaintiff;

   c. Damages against Defendants resulting from their breach of contract and/or unjust enrichment, on a *quantum meruit* basis;

   d. Punitive or exemplary damages as a result of Defendants' bad faith actions with respect to this matter;

   e. Reasonable attorneys' fees and costs pursuant to the agreement between Plaintiff and Shredz, which sets forth in Clause 16.1 of the Manufacturing Agreement: "The prevailing party of any dispute that may arise under this Agreement, excepting a dispute that is resolved by a non-binding procedure described herein, shall be entitled to its reasonable attorneys' fees and costs";

   f. Court costs of the proceedings herein, expenses, and judicial interest for both pre and post-judgment interest at the maximum allowable rate on any amounts awarded; and

   g. Such other and further relief as this Court may deem just and proper.

## X.     JURY DEMAND

Plaintiff hereby requests a jury trial for all issues in this case that properly are subject to a jury trial.

/s/ Aaron Easley
Aaron R. Easley, Esq.
SESSIONS, FISHMAN, NATHAN & ISRAEL, L.L.C.
*3 Cross Creek Drive*
*Flemington, NJ 08822*
*Phone: (908) 237-1660*
*Facsimile: (908) 237-1663*
Email: aeasley@sessions.legal

Attorneys for Plaintiff
S.K. Laboratories, Inc.